**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE No. 9:14-CV-80693-WJZ

WENDELL SMITH, individually and on
behalf of all others similarly situated,

       *Plaintiff*,

*v.*

IS3, INC., a Florida corporation,

       *Defendant*.

_____/

## <u>PLAINTIFF'S RESPONSE IN OPPOSITION</u>
## <u>TO DEFENDANT'S MOTION TO DISMISS</u>

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................1

II.  FACTUAL BACKGROUND....................................................................................3

    A.  iS3 Misrepresents the Software's Functionality Through Online
       Advertisements, Its Websites, and In-Software Statements ............................3

    B.  Plaintiff Smith Relied on iS3's Misrepresentations and Purchased
       STOPzilla ...............................................................................................4

    C.  An Examination into the Functionality of STOPzilla Confirms that it
       Does Not Perform as Advertised ..............................................................4

    D.  iS3's Software Performs Similarly to that of its Competitors .........................5

III. ARGUMENT .......................................................................................................6

    A.  This Court Should Not Consider the Documents Offered by iS3....................6

    B.  Smith Could, and Did, Reasonably Rely on iS3's Advertisements .................9

       i.   The EULA's Merger Clause Cannot Preclude Smith
           from Bringing a Claim for Fraud .................................................9

       ii.  Smith Has Sufficiently Pleaded His Fraud Claim ....................10

    C.  Smith Adequately Pleaded His Breach of Contract Claim ...........................12

    D.  Smith Properly and Adequately Alleged His Claim for Unjust
       Enrichment .........................................................................................13

       i.   Smith Properly Pleaded His Unjust Enrichment Claim in the
           Alternative to Breach of Contract .............................................13

       ii.  Smith Adequately Pleaded the Elements of His Unjust
           Enrichment Claim ......................................................................15

    E.  The Purported EULA and Terms and Conditions—Which Cannot be
       Considered at this Stage of the Proceedings—Do Not Require Smith's
       Demand for Incidental and Consequential Damages to be Stricken .............15

    F.  The Case Should Not be Stayed Pending a Ruling on iS3's Motion to
       Dismiss ...............................................................................................17

**IV.    CONCLUSION** ............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).......................................................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)....................................................6

*Hischon v. King & Spalding*, 467 U.S. 69 (1984) ..........................................................6

**United States Circuit Court of Appeals Cases:**

*Bickley v. Caremark RX, Inc.*, 461 F.3d 1325 (11th Cir. 2006).....................................8

*Brooks v. Blue Cross Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 2006)......................7

*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001)......................................12 n.5, 20 n.9

*Chudasama v. Mazada Motor Corp.*, 123 F.3d 1351 (11th Cir. 1997) ..........................19

*G&G TIC, LCC v. Ala. Controls, Inc.*, 324 Fed. Appx. 795 (11th Cir. 2009)...............8

*Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)...........................................................7

*Maxcess v. Lucent Techs., Inc.*, 433 F.3d 1337 (11th Cir. 2005)...................................8

*Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294 (11th Cir. 2007) ..........................10

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ......................................12

*Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986) .......................................................6

**United States District Court Cases:**

*Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308 (S.D. Fla. 2004).........................12 n.4

*Assa Compania De Seguros, S.A. v. Codotrans, Inc.*,
      No. 13-cv-23563, 2014 WL 1515239 (S.D. Fla. Apr. 18, 2014)......................16

*Barr v. Harvard Drug Grp., LLC*,
      No. 13-cv-62019, 2014 WL 2612072 (S.D. Fla. June 11, 2014)...................1 n.1

*Beaton v. SpeedyPC Software*, No. 13-cv-8389 (N.D. Ill.) .........................................19

*Beaver v. Inkmart, LLC*,
      No. 12-cv-60028, 2012 WL 3822264 (S.D. Fla. Sept. 4, 2012).......................11

*Ditthardt v. North Ocean Condos, L.P.*, 580 F. Supp. 2d 1288 (S.D. Fla. 2008) ............................6

*Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282 (S.D. Fla. 2009) ...................16

*Feldman v. Flood*, 176 F.R.D. 651 (M.D. Fla. 1997) ...................................................................18

*Gonzalez v. TZ Ins. Solutions, LLC*,
      No. 13-cv-2098, 2014 WL 103524 (M.D. Fla. Jan. 10, 2014) ..........................................14

*Gross v. Symantec Corp.*,
      No. 12-cv-00154, 2012 WL 3116158 (N.D. Cal. July 31, 2012) ........................2 n.2, 7, 8

*Hall v. TuneUp Corp.*,
      No. 13-cv-1804, 2013 WL 4012642 (N.D. Ill. Aug. 6, 2013) ...........................2 n.2, 8, 13

*Hi Neighbor Enterprises, Inc. v. Burroughs Corp.*, 492 F. Supp. 823 (N.D. Fla. 1980).........16 n.7

*Hutchings v. Federal Ins. Co.*,
      No. 08-cv-305, 2008 WL 4186994 (M.D. Fla. Sept. 8, 2008)...........................................17

*In re Winn Dixie Stores, Inc. ERISA Litig.*,
      No. 04-cv-194, 2007 WL 1877887 (M.D. Fla. June 28, 2007) ...................................20 n.9

*Karhu v. Vital Pharm., Inc.*,
      No. 13-cv-60768, 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) ..................................13, 14

*Koock v. Sugar & Felsenthal, LLP*,
      No. 09-cv-609, 2009 WL 2579307 (M.D. Fla. 2009)...................................................18, 19

*Kulesa v. PC Cleaner, Inc.*,
      No. 8:12-cv-00725, Dkt. No. 49 (C.D. Cal. Oct. 12, 2012)......................................2 n.2, 8

*Lady Di Fishing Team, LLC v. Brunswick Corp.*,
      No. 07-cv-402, 2007 WL 3202715 (M.D. Fla. Oct. 29, 2007)..........................................17

*Ledet v. Ascentive, LLC*, No. 2:11-cv-294 (E.D. Penn.) ........................................................2 n.2

*Liva v. Mendolia*, No. 13-cv-81047, 2014 WL 2118814 (S.D. Fla. May 21, 2014).............13 – 14

*McCabe v. Foley*, 233 F.R.D. 683 (M.D. Fla. 2006) ...................................................................17

*Mobil Oil Corp. v. Dade County Esoil Management Co., Inc.*,
      982 F. Supp. 873 (S.D. Fla. 1997) ...........................................................................13, 14

*Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305 (S.D. Fla. 2008) .............................................15

*Natarajan v. Paul Revere Life Ins. Co.*, 720 F. Supp. 2d 1321 (M.D. Fla. 2010) ....................9, 10

*Porter v. Collecto, Inc.*,
        No. 14-cv-21270, 2014 WL 2883979 (S.D. Fla. June 25, 2014)...................................2 n.1

*Precious Interior Designs, Inc. v. Astacio*,
        No. 07-cv-21297, 2007 WL 3228119 (S.D. Fla. Oct. 30, 2007) ...............................14 n.6

*Racca v. Celebrity Cruises, Inc.*, 606 F. Supp. 2d 1373 (S.D. Fla. 2009) .......................................8

*Ray v. Spirit Airlines, Inc.*,
        No. 12-cv-61528, 2012 WL 5471793 (S.D. Fla. Nov. 9, 2012) ...........................17, 18, 20

*Robichaud v. SpeedyPC Software*,
        No. 12-cv-04730, 2013 WL 818503 (N.D. Cal. Mar. 5, 2013) .........................................13

*Rondolino v. Northwestern Mut. Life Ins. Co.*, 788 F. Supp. 553 (M.D. Fla. 1992) ....................16

*Rottner v. AVG Technologies, CZ s.r.o., et al.*, No. 12-cv-10920 (D. Mass.) ..........................2 n.2

*SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178 (S.D. Fla. 2013) .........................7, 9

*Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598 (C.D. Cal. 1995)............................18

*Webb, et al. v. Cleverbridge, Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill.) ..................................2 n.2

*Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697 (S.D. Fla. 2013)...........................................16

## State Court Cases:

*Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.).............2 n.2

*Noack v. Blue Cross & Blue Shield of Florida, Inc.*,
        742 So. 2d 433 (Fla. Dist. Ct. App. 1999) .......................................................................10

*Romo v. Amedex Ins. Co.*, 930 So. 2d 643 (Fla. Dist. Ct. App. 2006)...........................................11

*Williams v. Bear & Stearns Co.*, 725 So. 2d 397 (Fla. Dist. Ct. App. 1998)..........................13, 14

*Wilson v. Equitable Life Assur. Soc. of U.S.*, 622 So. 2d 25 (Fla. Dist. Ct. App. 1993)...............10

## Federal Rules and Statutory Provisions:

735 ILCS 5/2-606 (West 2006)................................................................................................12 n.4

Fed. R. Civ. P. 12 .......................................................................................................................16

## I.     INTRODUCTION

This action challenges Defendant iS3, Inc.'s ("iS3" or "Defendant") deceptive design and marketing of its so-called STOPzilla utility software ("STOPzilla" or the "Software"). iS3's fraudulent scheme is fairly straightforward: First, it advertises the Software online and on its websites as capable of performing a lengthy list of functions, including, *inter alia*, detecting and removing computer viruses and malware, eliminating other common errors and threats, and protecting users' computers from such maladies going forward. Next, iS3 offers consumers a free download of the trial version of the Software that it represents will scan their computers for such issues. By intentional design, the free scan *always* finds a number of "problems" that it characterizes as "threats" that need to be "quarantined" and repaired. Finally, when consumers select the option to repair the problems supposedly detected by the Software, they are informed that they must pay to upgrade to the full version (typically at a cost between $19.95 and $49.95). The problem—and the primary basis of Smith's claims—is that neither the free trial nor full versions of the Software are designed to perform as advertised. Instead, they were both intentionally designed to invariably report innocuous files and folders as threats in an effort to induce consumers to purchase the full version of the Software and to continue using it in the future. As a result, Smith and numerous other consumers throughout the country were duped into overpaying for Software that simply does not perform as iS3 promised.

iS3 now seeks dismissal of Smith's claims in their entirety, to strike his request for damages, and to stay the action pending the Court's ruling on his motion for class certification.[1]

---

[1]     As explained in Smith's motion for class certification and reply in support of the same (Dkts. 5, 14), he filed the motion for class certification contemporaneously with his complaint to avoid iS3 attempting a so-called "pick-off"—i.e., mooting his claims with an offer of the full amount of relief he seeks to recover. *See, e.g., Barr v. Harvard Drug Grp., LLC*, No. 13-cv-62019, 2014 WL 2612072, at *2 (S.D. Fla. June 11, 2014) (recognizing that "an offer of full

Specifically, iS3 argues (i) that a purported End-User License Agreement ("EULA") and Terms and Conditions govern Smith's purchase of the Software and disclaim all liability for any warranties made about the Software, and consequently (ii) that Smith couldn't have relied on its alleged misrepresentations, (iii) that Smith's contract claim fails because he didn't attach the alleged contract and also because any contract would be found within the Terms and Conditions and EULA, and (iv) that his unjust enrichment claim cannot stand because he has an adequate remedy at law in the form of his claim for breach. Each of these arguments fails and is taken in turn below.[2]

---

requested relief [to the plaintiff] moots the case."); *Porter v. Collecto, Inc.*, No. 14-cv-21270, 2014 WL 2883979, at *4 (S.D. Fla. June 25, 2014) (dismissing action with prejudice when the plaintiff did not file a motion for class certification and the defendant offered the plaintiff more than the full amount of damages requested). Notwithstanding, Smith has requested, and iS3 does not oppose, that the Court withhold its ruling on the motion until the Parties have completed discovery and submitted more fulsome briefing on class certification issues. (*See* Dkts. 5, 11, 14.)

[2]     Not surprisingly, courts throughout the country have rejected similar arguments by iS3's industry competitors. *See, e.g., Gross v. Symantec Corp.*, No. 12-cv-00154, 2012 WL 3116158, at *11 (N.D. Cal. July 31, 2012); *Kulesa v. PC Cleaner, Inc.*, No. 8:12-cv-00725, Dkt. No. 49 at 15 (C.D. Cal. Oct. 12, 2012); *Hall v. TuneUp Corp.*, No. 13-cv-1804, 2013 WL 4012642, at *2 (N.D. Ill. Aug. 6, 2013). Several of the lawsuits against iS3's competitors have also resulted in class action settlements providing refunds to class members together with industry-leading reforms when it comes to the design and marketing of such software. *See, e.g., Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779 (Cir. Ct. Cook Cnty., Ill.) (Hon. K. Pantle, presiding) (creating $9.75 million settlement fund from which class members could make claims for $10 for each product purchased, requiring Defendant to provide consumers with enhanced disclosures regarding the functionality of the software at issue, and obtaining changes to the software itself; settlement finally approved on Sept. 13, 2011); *Webb, et al. v. Cleverbridge, Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill.) (creating $4 million settlement fund from which class members could make claims for $8 for each product purchased and requiring defendants to provide consumers with enhanced disclosures regarding the functionality the software at issue; settlement finally approved on December 7, 2012); *Ledet v. Ascentive, LLC*, No. 2:11-cv-294 (E.D. Penn.) (creating $9.6 million settlement fund from which class members could make claims for $18, requiring defendant to provide consumers with enhanced disclosures, and securing certain changes to the software itself; settlement finally approved on November 19, 2012); *Rottner v. AVG Technologies, CZ s.r.o., et al.*, No. 12-cv-10920 (D. Mass.) (allowing class members to make claims to receive up to full refunds of the purchase price of the allegedly offending software from a non-reversionary settlement fund, providing four (4) months of free access to AVG's

As it relates to iS3's motion to dismiss, the argument that the EULA and Terms and Conditions govern is incorrect, as they were not referenced by Smith, are not central to his claims, and in any event, are in dispute inasmuch as they were created after the date of Smith's purchase of the Software—i.e., he couldn't have agreed to them. And without the EULA, iS3's arguments for dismissal of Smith's fraud and contract claims, and its request to strike his prayer for damages must fail because they too rely exclusively on the existence of application of the EULA and Terms and Conditions.[3] Further, because Smith alleges his breach of contract and unjust enrichment claims in the alternative to each other, both may survive at the motion to dismiss stage. Finally, iS3's request to stay the action pending Smith's motion to dismiss should also be denied because iS3 has not demonstrated a particular or specific need for a stay, nor did it explain how it would be prejudiced without one.

For all these reasons and as explained further below, iS3's motions to dismiss, strike and stay should be denied in their entirety.

## II.     FACTUAL BACKGROUND

### A.     iS3 Misrepresents the Software's Functionality Through Online Advertisements, its Websites, and In-Software Statements.

Through its advertising materials and on its website, iS3 represents that its Software is capable of providing "protection from all security threats," "cleaning up existing infections," and providing the "ultimate in malware prevention and removal capabilities." (Compl. ¶ 15, Fig. 1, Fig. 2.) Once consumers install the free trial version, STOPzilla automatically performs a "Quick Scan" that supposedly detects "threats" and other problems existing on the users' computers. (*Id.*

---

proprietary antivirus software, and confirming that the defendants had ceased marketing and selling the software in question; settlement finally approved on May 5, 2014).

[3]      As explained further in Section III.A, *infra*, notwithstanding iS3's arguments regarding the EULA and Terms and Conditions, Smith has sufficiently pleaded his claims for fraud and breach of contract.

¶¶ 18–19.) iS3's Software then offers to "repair" the so-called threats it has detected. (*Id*. ¶¶ 19–20.) Despite iS3's clear representations, however, the Software does not accurately detect and repair the threats supposedly plaguing a user's computer. (*Id*. ¶¶ 24, 32 – 33, 35 – 37.) Instead—and by intentional design—it misrepresents and exaggerates the existence and severity of the threats in order to induce users into purchasing the full version of the Software. (*Id*. ¶¶ 37–38.)

**B.      Plaintiff Smith Relied on iS3's Misrepresentations and Purchased STOPzilla.**

In March 2014, Plaintiff Smith was browsing the Internet when he saw one of Defendant's pop-up advertisements for STOPzilla, which stated that the Software could "detect[], block[], and remove[] infections" from his computer as well as "protect [it] from Viruses and Malware…." (*Id*. ¶¶ 42–44.) Relying on these representations, Smith downloaded a trial-version of STOPzilla and later purchased (for $39.95) and installed the full version of the Software. (*Id*.) However, the Software Smith purchased did not and could not perform as iS3 represented. (*Id*. ¶ 45.) Because the Software was designed to arbitrarily, and invariably, detect and report false "infections" and "threats", it was not actually detecting the malicious "threats" which it had represented it would protect Smith's computer from. (*Id*.) As such, Smith purchased the Software under the false belief that it was capable of honestly and accurately assessing the condition of his computer and remedying the reported issues affecting his computer, which it was not. (*Id*.)

**C.      An Examination into the Functionality of STOPzilla Confirms that it Does Not Perform as Advertised.**

Prior to initiating this action, Smith (through his counsel) investigated the functionality of STOPZilla. The results of the investigation confirmed his suspicions that the Software was could not perform as advertised.  In particular, STOPzilla designed the Software to report harmless files known as "cookies" as "threats" and "infections" that need to be "quarantined." (*Id*. ¶ 24.)

Those assessments are in accurate. By way of example, "cookies" are generally innocuous files used by most popular websites to, *inter alia*, recognize when a user visits the website and gather certain data about the user. (*Id.* ¶¶ 24 – 27.) Even iS3 uses cookies—which it recognizes are "not inherently bad"—to track when a consumer visits one of its websites after viewing an advertisement and to subsequently pay the affiliate markers involved. (*Id.* ¶¶ 29 – 30.) Nevertheless, it designed the trial version of STOPzilla to *invariably* identify cookies—except its own—and categorize them as threats and infections that need to be quarantined without ever performing any real analysis to determine whether they pose a threat of any appreciable harm to a computer. (*Id.* ¶ 32, 34 – 35.)

Of course, the reason iS3 designed STOPzilla to report the existence of cookies, generally, is that they appear on a consumer's computer almost every time that consumer visits a new web page and thus, are a convenient metric to use in inflating the purported "threats" and "infections" on a computer. Indeed, every time a consumer runs a free trial scan with the Software, they are told their computer is need repair through use of the full version of the Software. (*Id.* ¶ 37.) Unfortunately for consumers, the full version of the Software was designed to perform in the same deceptive manner so as to induce them to believe that continued use of the Software is necessary to protect their computers going forward. (*Id.* ¶ 38.)

**D.    iS3's Software Performs Similarly to that of its Competitors.**

Unfortunately for consumers, iS3 is hardly alone in its fraudulent design and marketing practices. (*See e.g.*, n.2, *supra*.) The utility software industry has been fraught with these unscrupulous practices for over a decade. (*Id.*) It is only recently, however, that consumers have uncovered them and software developers—like iS3 and its competitors—have been called to account for their fraudulent ways. (*Id.*)

5

Indeed, numerous lawsuits have been filed against well-known competitors of iS3 (e.g., Symantec Corp. and AVG Technologies)—including several by Smith's counsel here—alleging similar claims related to the fraudulent design and marketing of so-called utility software products. Despite the fact that many of its industry competitors have entered into multi-million dollar class action settlements and changed their own marketing and design practices, iS3 has continued with business as usual.

## III.    ARGUMENT

"On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the nonmoving party are accepted as true." *Ditthardt v. North Ocean Condos, L.P.*, 580 F. Supp. 2d 1288, 1290 (S.D. Fla. 2008) (citing *Hischon v. King & Spalding*, 467 U.S. 69, 71 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986)). While federal pleading requires more than a "formulaic recitation of the elements" of a claim or "naked assertions," a complaint survives dismissal where it allows the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555-57 (2007)). As described further below, Smith's Complaint readily meets and exceeds these standards and none of iS3's arguments require dismissal.

### A.    This Court Should Not Consider the Documents Offered by iS3.

Instead of attempting to justify or validate the misrepresentations made through its advertising, iS3 primary argument is that the "incorporation by reference" doctrine requires the Court to consider documents that it claims are copies of the End User License Agreement and Terms and Conditions that apply to Smith's purchase of the Software, and which purportedly negate each of his claims. (Dkt. 10 at 3.) That argument misses its mark.

Generally, courts may only consider facts within the four corners of the complaint in ruling on a motion to dismiss. *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002). However, "under certain circumstances[,]" they may consider "extraneous materials that a defendant attaches to its dismissal motion." *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1188 (S.D. Fla. 2013). This exception is limited, and to fall within it "the document *must* have been referenced by the plaintiff in its complaint, it *must* be central to the plaintiff's claim, and its contents *must* not be in dispute." *Id.* (emphasis added); *Brooks v. Blue Cross Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 2006) (allowing incorporation "where the plaintiff *refer[red]* to certain documents in the complaint and those documents are *central to the plaintiff's claim.*") (emphasis added).

The incorporation by reference doctrine simply does not apply here. Smith does not allege that he viewed or relied upon the EULA or Terms and Conditions in purchasing the Software, nor does include their contents or otherwise refer to them in his Complaint. Given the fact that the Complaint "does not include any factual allegations related to the content of the agreement . . . the [EULA] cannot be 'central to the allegations.'" *Gross*, 2012 WL 3116158, at *11.

Even if that wasn't the case (it is), Smith also disputes the contents and authenticity of the EULA and Terms and Conditions for two reasons. First, Smith does not claim to have viewed or relied upon either of the documents in purchasing the Software and iS3 has offered no proof that he did. Thus, he is unable to authenticate the content of the documents at this point. Moreover, even if authentic, the EULA and Terms and Conditions attached to iS3's motion to dismiss are dated June 27, 2014—three months *after* Smith purchased STOPzilla. (Compl. ¶ 42.) Accordingly, on their face, the documents could not have applied to Smith's purchase and again,

iS3 has offered no proof that they did. *See SIG, Inc.*, 871 F. Supp. 2d at 1188-89 (refusing to incorporate agreement that was not undisputedly in existence when the plaintiff made the purchase at issue).

Not surprisingly, other courts considering this issue in the software context have declined to acknowledge purportedly applicable license agreements on motions to dismiss that were not alleged in the complaint or were disputed. *See, e.g.*, *Gross*, 2012 WL 3116158, at *11 (declining to consider license agreement even though the plaintiff acknowledged it in the complaint); *Kulesa*, No. 8:12-cv-00725, Dkt. No. 49 at 15 ("The FAC does not include factual allegations related to the content of the agreement, nor is it evident that Plaintiff relies on the License…[and therefore,] the Court finds that the License is not clearly 'central to the allegations' and declines to consider it…."); *Hall*, 2013 WL 4012642, at *2 ("Since Hall disputes the authenticity of the Licensing Agreement, TuneUp's reliance on the incorporation by reference doctrine is misplaced."). The Court can appropriately reach the same conclusion here.

Further, none of the authorities cited by iS3 require a different result. Indeed, unlike in this case, the defendants in each of those cases sought to incorporate by reference documents that were actually identified in the complaints at issue, that were central to the plaintiff's claims, and/or that were not in dispute. *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) (incorporating documents that were found to be referenced in the complaint and central to the plaintiff's claims); *G&G TIC, LCC v. Ala. Controls, Inc.*, 324 Fed. Appx. 795, 798 (11th Cir. 2009) (incorporating contract that was referenced in the complaint); *Racca v. Celebrity Cruises, Inc.*, 606 F. Supp. 2d 1373, 1375 (S.D. Fla. 2009) (incorporating document that was found to be referenced in the complaint, was central to the plaintiff's claims and was undisputed by the parties); *Maxcess v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 n.3 (11th Cir. 2005)

(incorporating contract that was found to be central to the complaint and that the parties did not dispute).

In light of the foregoing, the Court should limit its analysis to the four corners of Smith's Complaint and decline to consider the EULA and Terms and Conditions. Additionally, because iS3 hinges the rest of its arguments in support of dismissal on the application of these documents, they too should fail. *See SIG, Inc.*, 971 F. Supp. 2d at 1189 ("Because the AT & T Defendants' arguments for dismissal of all statutory claims and nearly all of the contract-related claims depend solely on the click-through agreement, the AT & T Defendants' dismissal motion is denied with respect to these claims.").

**B.      Smith Could, and Did, Reasonably Rely on iS3's Advertisements.**

iS3 next argues that Smith "cannot state a claim for fraudulent inducement" in light of the EULA and Terms and Conditions, because they "disclaim[] any express or implied warranties." (Dkt. 10 at 6-7.) This argument fails because—as described in Section III.A, *supra*—the EULA and Terms and Conditions cannot properly be considered at this stage. But even if they could, dismissal still wouldn't be warranted because (i) the merger clause contained within those instruments does not preclude Smith from bringing a claim for fraudulent inducement, and (ii) Smith has otherwise properly stated his claim for fraud under Florida law.

i.      The EULA's Merger Clause Cannot Preclude Smith from Bringing a Claim for Fraud.

Relying on the merger clause found in its purported Terms and Conditions, iS3 argues that Smith's fraud claim fails because its has disclaimed any and all alleged misrepresentations. (*See* Dkt. 10-2 at 8) ("This Agreement shall constitute the complete and exclusive agreement between us, notwithstanding any variance with any purchase order or other written instrument submitted by you, whether formally rejected by iS3 or not.") That argument doesn't withstand

scrutiny.

Merger clauses—like iS3's here—do "not categorically preclude the consideration of extraneous evidence of fraud in the inducement, except where the statements alleging fraudulent inducement are explicitly contradictory to a specific and unambiguous provision of the contract." *Natarajan v. Paul Revere Life Ins. Co.*, 720 F. Supp. 2d 1321, 1329 (M.D. Fla. 2010) (collecting cases); *see also Noack v. Blue Cross & Blue Shield of Florida, Inc.*, 742 So. 2d 433, 434-35 (Fla. Dist. Ct. App. 1999) ("it is a well-established rule that 'alleged fraudulent misrepresentations may be introduced into evidence to prove fraud notwithstanding a merger clause in a related contract.'"). This is especially true for form agreements that are not "specially negotiated contract[s] prepared with the advice of counsel." *Wilson v. Equitable Life Assur. Soc. of U.S.*, 622 So. 2d 25, 27-28 (Fla. Dist. Ct. App. 1993) (finding that a merger clause did not prevent the plaintiff from bringing a claim for fraud when the contract "simply ha[d] no explicit language discussing or foreclosing the possibility" of the representations on which he relied).

Here, there is no provision in the EULA or Terms and Conditions that is expressly at odds with iS3's misrepresentations regarding the functionality of the Software, and iS3 does not point to any. In fact, the EULA and Terms and Conditions seemingly point to those misrepresentations and warrant that the Software "will perform substantially in accordance with [them]." (*See, e.g.,* Dkt. 10-1 at 5.) Thus, without the misrepresentations "explicitly contradict[ing] [] a specific and unambiguous provision of the contract," any merger clause alone cannot protect it from liability for its misrepresentations. *See Natarajan*, 720 F. Supp. 2d at 1329.

        ii.    <u>Smith Has Sufficiently Pleaded His Fraud Claim.</u>

Smith has also properly pleaded the elements of his fraud claim. To state a claim for fraud, a plaintiff must allege: (1) a false statement regarding a material fact; (2) knowledge that

the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007). In addition to these elements, the plaintiff must also "reasonably rely on the statements in question," *Beaver v. Inkmart, LLC*, No. 12-cv-60028, 2012 WL 3822264, at *4 (S.D. Fla. Sept. 4, 2012), which is a question of fact that "may not be resolved at this early stage of proceedings." *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 652 (Fla. Dist. Ct. App. 2006).

Here, Smith alleges that iS3 advertised the Software as capable of performing a variety of functions—i.e., that it could eliminate threats, "offer[] real-time protection from all security threats," "provid[e] the ultimate in malware prevention and removal capabilities," and "detect[], block[], and remove[] infections before they can attack your system and do damage'" (Compl. ¶ 44, Fig. 1, Fig. 2)—but, in reality, that it couldn't do any of those things. (*Id.* ¶¶ 33 – 38, 45.) Smith further alleges that iS3 knew its representations were false inasmuch as it intentionally designed the Software such that it was incapable of performing as advertised, and further, that it intentionally made those representations to induce consumers to purchase the Software. That is, Smith not only alleges that iS3 designed the Software to "invariably and falsely label files as 'infections,' (*id.* ¶ 17) and "grossly mischaracterize the severity of [threats posed by the] files," (*id.* ¶ 23), but that it did so "to scare users into purchasing and continuing to use [it]." (*Id.* ¶¶ 17, 23.)

From there, Smith describes how he—like other consumers "lack[ing] the requisite technical expertise to independently gauge [the Software's] underlying functionality," (*id.* ¶ 62)—viewed iS3's representations that the Software "detects, blocks and removes infections before they can attack your system and do damage" and "works to protect you from Viruses and

Malware without slowing down your PC" and relied on them by purchasing the full version of the Software as a result. (*Id.* ¶ 44.) Because the Software didn't (and couldn't) perform as advertised, Smith alleges that he has "been damaged in the amount of STOPzilla's purchase price . . . or at least a portion thereof." (Compl. ¶ 63.)

Nothing more need be pleaded and Smith's fraud claim should survive.

### C.    Smith Adequately Pleaded His Breach of Contract Claim.

Next and again mistakenly relying on the EULA and Terms and Conditions, iS3 argues that Smith failed to state a claim for breach of contract because the EULA "belies Plaintiff's claim that [he] contracted…for specific results" and he supposedly failed to allege the existence of a "valid, identifiable contract." (Dkt. 10 at 7-8.)[4] Neither of these arguments have merit either. Setting aside that the EULA and Terms and Conditions cannot be considered at this point, to state a claim for breach of contract under Florida law, plaintiffs are required to allege "(1) the existence of a contract; (2) material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).[5] Smith did just that.

First, Smith alleges the existence of a valid sales contract through which "iS3 agreed to sell, and Plaintiff and the members of the Class agreed to purchase, [Software] which would

---

[4]    Notably, iS3 argues that dismissal is also required because Smith didn't attach a copy to or incorporate the supposed agreement in his pleadings. (*See* Dkt. 10 at 8 n.3 (citing 735 ILCS 5/2-606 (West 2006); *Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308, 1327 (S.D. Fla. 2004))). Its authorities for that proposition, however, are inapposite. For instance, one authority is an Illinois statute that has no relevance to the claims at issue here, which arise under Florida law. (Dkt. 10 at 8 n.3) (citing 735 ILCS 5/2-606.) And iS3 mischaracterizes the holding in the second, as *nowhere in the ruling* does the court ever state that "Where there is no written contract, dismissal is mandated…." (*See* Dkt. 10 at 8 n.3) (citing *Afkhami*, 305 F. Supp. 2d at 1327.)

[5]    Defendant also argues that because "there are no obligations for a guaranteed result which has been assumed by [i]S3," Smith's breach of contract claim should be dismissed with prejudice. (Dkt. 10 at 8.) It goes without saying that the Federal Rules and precedent establish that leave to amend "should be freely given." *See, e.g., Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

purportedly scan consumers' PCs for threats and infections, remove those threats, and protect their computers" (the "contract"). (Compl. ¶ 66.) Smith also alleges that he and the Class paid, and iS3 accepted, the purchase price of the STOPzilla Software, but that iS3 breached the contract by failing to provide software that could perform the functions promised (the "material breach"). (*Id.* ¶¶ 67, 69.) Consequently, Smith and the Class were damaged in the form of the monies they overpaid for the Software ("damage") that could not perform as promised.  (*Id.* ¶ 71); *see also Robichaud v. SpeedyPC Software*, No. 12-cv-04730, 2013 WL 818503, at *13 (N.D. Cal. Mar. 5, 2013); *Hall*, 2013 WL 4012642, at *4.

Accordingly, Smith has sufficiently pleaded the elements of his breach of contract claim and it should stand.

### D.      Smith Properly and Adequately Alleged His Claim for Unjust Enrichment.

Defendant next argues that Smith's claim for unjust enrichment must be dismissed because the existence of an adequate legal remedy—i.e. his breach of contract claim—precludes him from bringing such a claim. (Dkt. 10 at 9 – 11.) This argument is both ironic and meritless. It is ironic in the sense that Defendant argues that the EULA prevents Smith from having any remedy under contract law (and therefore, any adequate legal remedy). (*Id.* at 7 – 9.) It is meritless because it mischaracterizes the law. Nevertheless, Plaintiff properly pleaded his unjust enrichment claim in the alternative to his claim for breach of contract.

### i.      Smith Properly Pleaded His Unjust Enrichment Claim in the Alternative to Breach of Contract.

Generally, "if the complaint on its face shows that adequate legal remedies exist, equitable remedies are not available." *Williams v. Bear & Stearns Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998) (quoting *Mobil Oil Corp. v. Dade County Esoil Management Co., Inc.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997)). But that does not affect whether a plaintiff can assert claims

13

for both breach of contract and unjust enrichment; it just affects whether the plaintiff can *recover* under both. *See, e.g.*, *Karhu v. Vital Pharm., Inc.*, No. 13-cv-60768, 2013 WL 4047016, at *9 (S.D. Fla. Aug. 9, 2013) (finding that the "Federal Rules permit a party to plead alternative legal and equitable theories for recovery" even though they may not recover under both); *Liva v. Mendolia*, No. 13-cv-81047, 2014 WL 2118814, at *5 (S.D. Fla. May 21, 2014). Further, under Florida law, a claim for unjust enrichment only fails after a showing of an express contract. *Williams*, 725 So. 2d at 400 (citing *Mobil Oil Corp.*, 982 F. Supp. at 880). Thus, "until an express contract is *proven*, a motion to dismiss a claim for…unjust enrichment…is premature." *Williams*, 725 So. 2d at 400 (emphasis added); *see also Liva,* 2014 WL 2118814, at *5 (when "no answer to the Complaint has been filed yet, it is unclear whether existence and enforceability of the contract are at issue in this case.") (emphasis added); *Karhu*, 2013 WL 4047016, at *9. Additionally, unless an express contract is at issue, plaintiffs need not allege that no adequate remedy at law exists. [6] *Gonzalez v. TZ Ins. Solutions, LLC*, No. 13-cv-2098, 2014 WL 103524, at *2 (M.D. Fla. Jan. 10, 2014).

Here, Smith pleaded his claim for unjust enrichment in the alternative to his breach of contract claim. (Compl. ¶ 72.) Nowhere in his claim does he refer to a contract, nor did he reference any part of the Complaint that does. Additionally, "it is unclear whether existence and

---

[6]     iS3 relies on *Precious Interior Designs, Inc. v. Astacio*, No. 07-cv-21297, 2007 WL 3228119, at *2 (S.D. Fla. Oct. 30, 2007), in arguing that because Smith did not allege he has no adequate legal remedy, his unjust enrichment claim must be dismissed. (Dkt. 10 at 11.) But that case is factually inapposite. Indeed, the court recognized that unjust enrichment may be pled in the alternative to various claims and only dismissed the plaintiff's unjust enrichment claim (with leave to amend) after recognizing that the plaintiff mentioned the supposed contract in its unjust enrichment claim. *Precious Interior Designs, Inc.*, 2007 WL 3228119, at *2. Here, Smith does not mention the Parties' contract in his unjust enrichment claim, nor does he incorporate any paragraphs of the Complaint mentioning it. (*See, e.g.*, Compl. ¶¶ 72 – 76.) Accordingly, his claim for unjust enrichment was adequately pleaded in the alternative to his contract claim, and it should stand.

enforceability of the contract are at issue in this case" or whether Smith can only recover under a theory of unjust enrichment, because the Court has not yet ruled on his breach of contract claim. *See Liva* 2014 WL 2118814, at *5 (holding that a plaintiff could pursue an unjust enrichment claim while also alleging the existence of a valid contract because the answer to the complaint had not been filed, and existence and enforceability of the contract were not yet at issue). As such, it is premature to determine whether Smith has an adequate remedy at law, and Smith properly pleaded his claim *in the alternative to* breach of contract.

      ii.    <u>Smith Adequately Pleaded the Elements of His Unjust Enrichment Claim</u>.

Smith also adequately pleaded the elements of his unjust enrichment claim. To state a claim for unjust enrichment, a plaintiff must allege that "(1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained that benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305, 1312 (S.D. Fla. 2008) (citation omitted). Here, Smith alleges that he conferred a benefit upon iS3 by paying it $39.95 to purchase the full version of the Software and that iS3 voluntarily accepted and retained those monies. (Compl. ¶¶ 44-45, 73-74.) He further alleges that the retention of the purchase price paid is unjust and disregards the principles of equity and good conscience, because iS3 provided him Software that it knew does not (and cannot) perform the functions it promised. (*Id.* ¶¶ 73, 75.)

Smith has adequately stated his claim for unjust enrichment as well. *See Hall,* 2013 WL 4012642, at *5.

**E.    The Purported EULA and Terms and Conditions—Which Cannot be Considered at this Stage of the Proceedings—Do Not Require Smith's Demand for Incidental and Consequential Damages to be Stricken.**

iS3 continues its kitchen-sink approach by arguing that Smith's request for incidental and consequential damages should be stricken in light of the EULA's disclaimer of "any special, incidental, indirect, or consequential damages whatsoever… arising out of the use of or inability to use the software or the failure to provide support services…." (Dkt. 10 at 12) (citing EULA). This argument misses its mark too—indeed, as an initial matter and for the reasons outlined in *supra* Section III.A, the EULA cannot be considered at this stage of the proceedings and thus, any supposed disclaimer of damages is irrelevant.[7] *See Rondolino v. Northwestern Mut. Life Ins. Co.*, 788 F. Supp. 553, 554-55 (M.D. Fla. 1992) (emphasis added).

Even if that wasn't the case (it is), courts "may [only] strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "In evaluating a motion to strike, the court must treat all well pleaded facts as admitted and *cannot consider matters beyond the pleadings*." *See Rondolino*, 788 F. Supp. at 554-55 (emphasis added). Because "[a] motion to strike is intended to remove irrelevant or otherwise confusing materials[ it] will usually be denied unless the material has no possible relation to the controversy and may cause prejudice to one of the parties." *Assa Compania De Seguros, S.A. v. Codotrans, Inc.*, No. 13-cv-23563, 2014 WL 1515239, at *3 (S.D. Fla. Apr. 18, 2014) (quoting *Williams v. Delray Auto Mall, Inc.,* 289 F.R.D. 697, 699 – 700 (S.D. Fla. 2013)).

---

[7]    iS3's only cited authority on the issue is inapposite as well. In *Hi Neighbor Enterprises, Inc. v. Burroughs Corp.*, 492 F. Supp. 823 (N.D. Fla. 1980), the court held that the damages provision of a contract limited the amount of damages the plaintiff could seek when ruling on a motion for summary judgment. That damage provision, however, was found in a contract that was properly before the court. *Id.* at 824, 827. By contrast, the purported EULA and Terms and Conditions iS3 relies upon here were not attached to Smith's Complaint, are not referenced in the Complaint, and therefore, cannot be considered on iS3's motion.

Indeed, "courts consider striking a pleading to be a drastic remedy to be resorted to only when required for the purposes of justice." *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1300 (S.D. Fla. 2009).

Here, Smith's request for damages isn't "irrelevant or otherwise confusing," and iS3 has not established that it will be prejudiced if it remains. *See Assa Compania De Seguros, S.A.*, 2014 WL 1515239, at *3. The request is simply a prayer for relief that is commonly made by consumer plaintiffs. Accordingly, the Court should deny its motion to strike Smith's request for consequential and incidental damages. *See Hutchings v. Federal Ins. Co.*, No. 08-cv-305, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (denying motion to strike when the defendant failed to "demonstrate[] that [p]laintiff's request for damages has no possible relationship to the controversy, may confuse the issue, or will otherwise prejudice [d]efendant."); *Lady Di Fishing Team, LLC v. Brunswick Corp.*, No. 07-cv-402, 2007 WL 3202715, at *8 – 9 (M.D. Fla. Oct. 29, 2007) (denying motion to strike request for incidental and consequential damages that were disclaimed in the contract).

**F.      The Case Should Not be Stayed Pending a Ruling on iS3's Motion to Dismiss.**

Finally, iS3 asks the Court to enter a stay pending a ruling on its motion to dismiss. Though it is unclear whether iS3 is asking for a stay of the entire action or just a stay of briefing on class certification,[8] the request should be denied. (*See e.g.*, Dkt. 11 at 12 – 14.) iS3 makes no attempt to explain (as it's required to) why its arguments in support of dismissal are dispositive of this case or why proceeding with the action now while the Court considers them would be inappropriate.

First, unless "[d]ismissal of the case with prejudice is [] a foregone conclusion," courts

---

[8]      Because Smith has already responded to iS3's purported request to stay briefing on class certification (*see* Dkt. 14), he limits his response as if iS3 requested a stay of the entire action.

should not grant full stays of discovery. *Ray v. Spirit Airlines, Inc.*, No. 12-cv-61528, 2012 WL 5471793, at *1 – 2 (S.D. Fla. Nov. 9, 2012) (the "[Southern] District's Local Rules make clear…that a stay of discovery pending the determination of a motion to dismiss is the exception rather than the rule.") (citation omitted); *see also McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) ("A request to stay discovery pending a resolution of a motion is rarely appropriate unless resolution of the motion will dispose of the entire case."). Nevertheless, a party requesting a stay bears the burden of "showing good cause and reasonableness" for it. *See Feldman v. Flood*, 176 F.R.D. 651, 651 (M.D. Fla. 1997) (quotation omitted). It is required to "show a particular and specific need for [the stay] as opposed to making stereotyped or conclusory statements." *Ray*, 2012 WL 5471793, at *2 (quoting *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 560 (C.D. Cal. 1995)). This requirement is magnified in the context of a motion to dismiss, where "the delay and prolongation of discovery can [] create case management and scheduling problems and unfairly hold up the prosecution of the case." *Id.* (citations omitted).

Because iS3's entire motion rests on its mistaken belief that the EULA and Terms and Conditions apply and should be considered (they shouldn't), the analysis could end there and the motion to stay be denied. *See Koock v. Sugar & Felsenthal, LLP*, No. 09-cv-609, 2009 WL 2579307, at *2 (M.D. Fla. 2009) (denying motion to stay when the "motion to dismiss is not so clear on its face that there is 'an immediate and clear possibility that it will be granted.'") (quoting *Feldman*, 176 F.R.D. at 653). This is especially true given that iS3's arguments are essentially repackaged from motions brought by its industry competitors in similar cases alleging claims against "utility" software developers. Indeed, the reality is that those courts have largely accepted Smith's legal theories—similar to the ones alleged here—and several of those cases have resulted in multi-million dollar class action settlements and industry-changing

modifications to the software at issue. (*See supra* note 2.) With that as the backdrop, the idea that iS3's motion will be any more successful than the others doesn't carry water, especially when all of its arguments hinge on its failed attempt to incorporate the EULA and Terms and Conditions.

That aside, iS3 also fails to make any showing of a need to stay the action, let alone a "particular" and "specific" one. It does not specify what expenses it believes it will incur or why it would be burdened or prejudiced by engaging in discovery or otherwise proceeding. Instead, it actually explains that discovery is necessary prior to resolving Plaintiff's motion for class certification. (Dkt.11 at 14 – 17.) Without more, the motion for a stay should be denied. *See Ray*, 2012 WL 5471793, at *2 ("This case may end in dismissal, but that outcome is not apparent enough after a 'preliminary peek' to warrant an across-the-board stay of discovery right now— an outcome that is considered the exception rather than the rule."). In fact, courts considering requests to stay in cases against iS3's industry competitors regularly deny such motions, as any expense or burden to be incurred by the parties is inevitable given that the motion is unlikely to dispose of the action. *See, e.g.*, *Beaton v. SpeedyPC Software*, No. 13-cv-8389, Dkts. 14, 28 (N.D. Ill.) (twice refusing to stay discovery pending resolution of the defendant's motion to dismiss in a similar case against a utility software developer).

Further, Defendant's reliance on *Chudasama v. Mazada Motor Corp.*, 123 F.3d 1351 (11th Cir. 1997) is misplaced. (Dkt. 11 at 12.) In *Chudasama*, while the court ultimately held that a motion to dismiss for failure to state a claim "should…be resolved before discovery begins," 123 F.3d at 1368, that holding did not provide a blanket rule that discovery should be stayed. *Koock*, 2009 WL 2579307, at *2. "Instead, *Chudasama* and its progeny 'stand for the much narrower proposition that courts should not delay *ruling* on a likely meritorious motion to dismiss while undue discovery costs mount." *Id.* (citing *In re Winn Dixie Stores, Inc. ERISA*

*Litig.*, No. 04-cv-194, 2007 WL 1877887, at *1 (M.D. Fla. June 28, 2007)) (emphasis added).

 In the end, because "dismissal of th[is] case with prejudice is [far from] a foregone conclusion," *see Ray,* 2012 WL 5471793, at *2, and iS3 has not demonstrated a particular harm it will suffer should the action proceed, iS3's motion to stay should be denied.

## IV. CONCLUSION

 For the foregoing reasons, Plaintiff Wendell Smith respectfully requests that the Court enter an Order (i) denying iS3's motion to dismiss and strike in its entirety, (ii) denying iS3's motion to stay in its entirety, (iii) requiring iS3 to answer his Complaint, and (iv) awarding such other and further relief as the Court deems reasonable and just.[9]

       Respectfully submitted,

       **WENDELL SMITH**, individually and on behalf of
       all others similarly situated,

Dated: July 28, 2014     By: /s/ Scott D. Owens
        One of Plaintiff's Attorneys

       Scott D. Owens (Florida Bar No. 597651)
       scott@scottdowens.com
       LAW OFFICE OF SCOTT D. OWENS, ESQ.
       664 East Hallandale Beach Boulevard
       Hallandale, Florida 33009
       Tel: 954.589.0588
       Fax: 954.337.0666

---

[9] In the event that the Court grants iS3's motion to dismiss (partially or otherwise), Smith respectfully requests that the Court grant him leave to add further detail, additional claims, or otherwise take the necessary steps to cure any defects found by the Court in his pleadings. *See, e.g., Bryant*, 252 F.3d at 1163 (reversing court's dismissal with prejudice and finding that leave to amend should be freely given).

Benjamin H. Richman
brichman@edelson.com
Courtney C. Booth
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

<u>**CERTIFICATE OF SERVICE**</u>

I, Scott D. Owens, an attorney, certify that on July 28, 2014, I served the above and foregoing ***Plaintiff's Response in Opposition to Defendant's Motion to Dismiss***, by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system

/s/ Scott D. Owens
Scott D. Owens, Esq.